Thank you, Your Honors. Courtney Stelan making a special appearance for Ms. Ellen Berry, representing Petitioner Santiago Gutierrez on appeal, and if I may reserve two minutes for rebuttal. Okay, watch your clock. I will. Thank you very much, Your Honor. Your Honor, we're here today to discuss and clarify three salient points, the first being the standard of review that governs this case, the second being the errors, and the third being the issue of prejudice. Beginning with standard of review and to clarify, Mr. Gutierrez's case is, in fact, covered by the AEDPA. Questions of fact, excuse me, questions of law and mixed questions of law and fact are to be reviewed de novo by this Court, but yes, the questions of fact, of pure fact, are to be reviewed for clear error. And we are here today regarding a dispute of fact, and therefore, any issues of fact shall be reviewed, you know, under the standard of review of clear error. However, we believe that there were, in fact, clear errors made at the court below by the district court concerning two very important facts in this case. The first being that trial counsel knew about the affirmative defense of voluntary intoxication to the specific intent crimes that Mr. Gutierrez was charged with, and second, that her decision to represent Mr. Gutierrez and, in a sense, to, if not encourage, to go with him down the path of pursuing a plea so early on, was, in fact, incorrect. In fact, a strategic decision, it's our position that it was not a strategic decision. There are too many holes and too many sort of bits of information that were gathered during the evidentiary hearing to suggest that trial counsel did not recognize or understand that voluntary intoxication was a defense. Kagan, it actually goes only to the deficiency prong, but not to the prejudice prong. What about the prejudice prong? Both of your issues are in there. Certainly. And perhaps most importantly with respect to the prejudice prong, it's, again, we believe clear error that the finding that there was a strategic decision made to forego the trial opportunity and to pursue the plea. But what do you do when your client repeatedly tells you that he wants to plead guilty? The client in this case was incapacitated in a wheelchair, had a bullet in his head, was not right, was not feeling well ever, was not, to say he was not feeling well is, quite frankly, an understatement. And that client never had the information that he had a viable defense to eight of the 23 charges against him or, excuse me, nine. When you're talking about the voluntary intoxication defense, was that his sole viable defense? It was probably the most important and his most important viable defense, if not the only viable defense. But it would have spoken to the prosecution's burden to approve specific intent to the underlying crimes of all the attempted murder charges, as well as the attempted kidnapping, attempted robbery, and I believe robbery as well. But why wasn't it a strategic decision on the part of his counsel not to go to trial and use that defense when there was so, when he had denied drinking to the police and he was on videotape and he looked as though he was pretty much in control of the car and he certainly was able to control a gun and shoot it many times at the police officers? Your Honor, there was, there was evidence, there was further evidence that he had been intox, he had had long, there was long-term intoxication, intoxication through the use of methamphetamines and alcohol, significant amounts the previous day. Expert testimony presented during the evidentiary hearing that this kind of long-term use and even 24 hours previous usage could allow an individual who has participated in the long-term use to exhibit executive functioning, that is sort of muscle memory, commit muscle memory behavior, such as driving a car or even holding a gun for an experienced military man who was a good marksman. Well, those are all good theories, but they were all heard out and a factual determination was made contradicting all those things, wasn't that? Yes, Your Honor, but we've been able to do that. And you say they're clearly erroneous. You've got to go some to show that. What makes them clearly erroneous? Well, in, in, in this case, during the evidentiary hearing, referring to pages, the excerpts of record of our brief, pages 30 forward, trial counsel is clearly still confused about the viability of the voluntary intoxication defense number one. Well, I don't know how often it's used, but it doesn't seem to me that it's usually very successful, is it? A voluntary intoxication defense, in my experience, sometimes exacerbates the crime in the minds of the jury. It's not very good tactic sometimes to raise that type of defense. But in this case, Your Honor, she was, the tactical decision to go forward with the plea, she was still looking at a statutory minimum, a minimum, a statutory minimum on her best day of 2 plus 20 years and life plus 20 years. So on her very, very best day, getting to pick her judge and getting her judge to do exactly as she wanted, the judge was still bound to not only all of the determinant years, 2 plus 20, and the extra 20 attached to the life, but life. There was an absolute statutory minimum. And therefore, under the circumstances — I started by asking you the prejudice question. You never really addressed it. I beg your pardon, Your Honor. I believe that that actually does address the prejudice. You believe what? I believe that that starts to — I don't understand how the issue about whether she knew about the voluntary intoxication or didn't. Let's assume that she did — first of all, she says that she's explored the issue, not with the words voluntary intoxication, but essentially the same issue. But leaving that aside — Yes, Your Honor. Suppose she had brought the motion. Why would it have succeeded? We believe it would have succeeded because we believe that there was sufficient evidence to have created, to have given the jury enough to have found that he — that there was intoxication such as — And also, what is the standard? There's a new opinion on this now, but what — what is this — this is — he has to prove that he would have pleaded guilty. He would have gone to trial, right? We have to show that he — that he — that he — well, essentially the standard, as I understand it from Strickland, is that — Prejudice standard, I mean. Yeah, that — that the — that the evidence presented at the evidence — What he has to show is that but for counsel's alleged error, he would have gone — He would not have pled guilty. He would not have pled guilty, but also there's a separate standard or there's an additional standard that evidence presented at the evidentiary hearing undermines the confidence of the outcome. The outcome in this case was that the petitioner pled guilty and received at one point over 200 years and then at a later point around, you know, around — more closer to 100 years. Further, when — Is there any evidence that when he pled guilty, he wasn't aware of these statutory minimums and maximums? There's evidence — there's evidence in the record and that was adduced at the evidentiary hearing that trial counsel did not communicate to Mr. Gutierrez that he had a viable defense that could have been mitigating and that could have absolved him. Well, I don't understand that because there's a whole discussion on pages SER 105 to 106, 107, where the trial counsel says that she did speak to him about whether his — the fact that he was using alcohol and drugs would have been a defense and he said he didn't want to go to trial under any circumstances and then she said that he talked about specific intent issue and so on. Your Honor, she does speak at the evidentiary hearing about specific intent, but if you look back specifically at the pages that I've referenced, page 30 and onward, she's actually still very confused about the relative importance of obtaining the medical records from County USC on the day that gave an indication that — But she discussed with him whether it would do any good to do this, and he said no because I want to go to trial. That's what I understood it to be. I — I believe she had certain discussions with him. I'm sorry. I'm going to plead guilty. I believe she had certain discussions with him about what he was facing, that he was looking at a lot of years, that he was in a lot of pain. And I believe he did say to her repeatedly that he did not want to go to trial. However, I don't believe that he was well-informed of what his options were, and I also believe he wasn't entirely present, you know, during that time. Your Honor, if my — may I reserve my remaining time? You're using — yes, you're using up the time that you reserved. Thank you. If I may, just for the last 40 seconds. Thank you. Good morning, Your Honors. Deputy Attorney General Stephanie Brennan on behalf of Warden Reynolds. In this case, there was no IAC, as the district court correctly found. Following an evidentiary hearing, the district court conducted a careful analysis of all the evidence presented. It made numerous factual findings and independently concluded that the California Supreme Court, who had previously denied the claim, that as the California Supreme Court, that counsel was not ineffective under Strickland. Quite simply, as the evidence presented at the evidentiary hearing showed, petitioner cannot show deficient performance, and he certainly cannot show prejudice. All the evidence in this case just showed that it was overwhelming — of overwhelming evidence of guilt. There were the videotapes, the audiotapes, his own statements to the police. Everything showed that he was not voluntarily intoxicated, and certainly that — what didn't impair his ability to have specific intent in this matter. And secondly, going to the prejudice front, there's absolutely no evidence, no showing that he would have ever gone to trial. He was adamant at every time that he spoke with his trial counsel that he did not want to go to trial, that he wanted to plead guilty. And finally, there's just no way that he would have been successful. In sum, the decision, the strategic decision to plead open in this case to a judge of the defense's own choosing was his best option for leniency. And for that reason, in this case, there's quite simply no IAC. The district court got it right. The California Supreme Court got it right. So for all those reasons, this Court should affirm the denial of the First Amendment petition in this case. If Your Honors have any questions? No. Thank you, counsel. Thank you. Thank you, Your Honors. In my last 30 seconds, it's just important to emphasize that it does — it appears clear from the record that the trial counsel didn't — simply didn't recognize the existence or the relative importance of a potential volunteer intoxication defense. There was ample evidence to support the premise that he would have had their instruction, that a jury could have seen it that way. There is expert testimony to explain why he was able to do some things and not able to do others. And further, he was — when she pled him, there was a statutory minimum of — well, of a determinate term of approximately 42 years in addition to a life sentence. And therefore, it doesn't seem reasonable that that could have possibly been a strategic decision on her part. And that's the question. All right. Thank you very much, counsel. Thank you very much, Your Honors. Dichiaris v. Reynolds will be submitted, and we'll take up Milne v. Lewis.
judges: Wardlaw, Berzon, Miner